UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KIM EDWARD ROGERS,<br><br>    Defendant. | No.  2:15-cr-00016-MCE-1<br><br>**MEMORANDUM AND ORDER** |

    Defendant Kim Edward Rogers ("Defendant") is charged with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  ECF No. 9.  Presently before the Court is Defendant's Motion to Suppress Evidence ("Motion").  ECF No. 24.  The Government opposes the Motion, and both sides have fully briefed the pertinent issues.  See ECF Nos. 30, 31, 40.  The Court held an evidentiary hearing on December 10, 2015 and permitted oral argument on December 14, 2015.  For the reasons that follow, Defendant's Motion is GRANTED.

///
///
///
///
///

# BACKGROUND[1]

On November 15, 2014, California Highway Patrol ("CHP") Officer Wesley Fish ("Officer Fish") observed Defendant driving a black Volvo sedan seventy-two miles per hour and executing an unsafe lane change on Highway 50 in Sacramento, California. Officer Fish pursued Defendant without activating the emergency lights or siren on his motorcycle. Defendant exited the highway at 58th Street at an estimated eighty-five miles per hour. Thereafter, Officer Fish activated his emergency lights and siren, and Defendant stopped and parked his car in a residential neighborhood. Officer Fish instructed Defendant to exit the vehicle and immediately arrested him for reckless driving.[2]

With Defendant in handcuffs and sitting on the sidewalk, Officer Fish searched Defendant's vehicle. The search included examination of the trunk of the vehicle and several bags therein. When Officer Fish asked Defendant if there was anything of value in the bags, Defendant replied "no, just music." Officer Fish then began opening the bags. In one, he found a Sony Camcorder. In another he observed individual compact discs ("CDs") with labels such as "Land Park Volleyball 08/04/07" and "Sac State Gym Day 2." Officer Fish asked if there was pornography, and Defendant replied that there was not.

After reading more titles, including "hot girls flash" and "Sac State Track Ass/Pussy 03/22/08," Officer Fish commented that the labels "sounded like pornography." Defendant replied: "Oh . . . adult pornography. Yes." Officer Fish then observed another CD with the label "Junior Cheer."[3] Based on the labels of the CDs,

---

[1] This statement of facts is based on Defendant's Motion, the Government's Opposition, and Officer Fish's testimony at the evidentiary hearing on December 10, 2015.

[2] At some point after arrest, Defendant requested that Officer Fish allow him to call his mother, the registered owner of the vehicle, so that she could drive the vehicle to her home (which was approximately eight miles away).

[3] The Government's Opposition provides additional labels that further suggest that the CDs contained child pornography: "5 star disk; Lil girl spreads ass/pussy; lil girls suck cock; bella ass; Lil blond

Defendant's response, and Defendant's status as a California Penal Code section 290 registrant,[4] Officer Fish suspected that the CDs contained child pornography. Officer Fish contacted a superior, and law enforcement officers subsequently seized the CDs.

Four hours later, Sacramento Sheriff's Department Detective James Williams interviewed Defendant at the CHP South Station. Detective Williams informed Defendant that the reason for the interview was not the reckless driving offense for which he had been arrested, but rather Defendant's status as a registered sex offender. Detective Williams read Defendant his Miranda rights[5] and immediately began questioning Defendant without any explicit waiver. After asking questions about the CDs, Detective Williams completed—and Defendant signed—a form consenting to a search of the seized CDs. Detective Williams also elicited several admissions from Defendant. At the conclusion of the interview, Defendant was booked into Sacramento County Main Jail. Defendant was released from custody a day or two later.

On January 8, 2015, Defendant was arrested for possession of child pornography. Law enforcement advised Defendant of his Miranda rights, and Defendant explicitly invoked his right to remain silent. A United States Marshal asked booking questions while Defendant was in transport to the federal courthouse. Detective Williams was present and asked Defendant, who suffers from psoriasis, if psoriasis was just really bad dry skin. Defendant explained his medical condition and pulled up his pant leg to expose a white flaky patch on his knee. Detective Williams recognized that he saw similar scarring in a video on one of the seized CDs.

///

///

---

panty show; Limewire; Real nasty + new (437); Daphne n braids gets licked and sucks cock."; "All youtube lil girls 4 hrs."; "Rachel + girls / midsizepics; cuties + eternal; Lil white girls / I like . . . ." ECF No. 30 at 8 n.2.

[4] California Penal Code section 290 et seq. states the registration requirements of sex offenders residing, attending school, or working in California.

[5] See Miranda v. Arizona, 384 U.S. 436 (1966).

**ANALYSIS**

In the pending Motion, Defendant seeks suppression of: (1) the CDs; (2) his statements during the search of his vehicle; (3) his statements at the CHP South Station; and (4) his statements regarding his psoriasis.  The Court need only discuss why it must suppress the CDs, as the fruit of the poisonous tree doctrine requires the suppression of the other evidence that Defendant identifies in the Motion.

**A.  The Fourth Amendment and the Government's Burden**

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  See also Ramirez v. City of Buena Park, 560 F.3d 1012, 1024-25 (9th Cir. 2009) ("The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment.").  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  Riley v. California, 134 S. Ct. 2473, 2482 (2014).  "[T]he government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement."  United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012).

Officer Fish did not obtain a warrant before impounding[6] and searching Defendant's vehicle.[7]  The Government therefore bears the burden of showing that the impoundment and search falls within an exception to the Fourth Amendment's warrant requirement.  In an attempt to meet that burden, the Government argues that

///

---

[6] At the evidentiary hearing, Officer Fish distinguished between "storing" and "impounding" a vehicle (and explained that he decided to store, not impound, Defendant's vehicle).  See, e.g., ECF No. 45 at 25:7-25:11.  The Court acknowledges Officer Fish's distinction but nevertheless refers to the storing of Defendant's vehicle as an impoundment.

[7] Although Defendant's mother owns the vehicle, the Court will refer to it as "Defendant's vehicle" for the sake of efficiency.

impoundment of Defendant's vehicle was valid under the community caretaking doctrine and that the subsequent search was a valid inventory search.

### B. The Community Caretaking Doctrine

Under the community caretaking doctrine, impoundment of a vehicle is reasonable if it serves a "valid caretaking purpose." Cervantes, 703 F.3d at 1141. "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005).

The Court must first note that Officer Fish's understanding of the community caretaking doctrine is considerably more expansive than the doctrine that the Ninth Circuit has expounded. At the evidentiary hearing, Officer Fish testified that by impounding a vehicle lawfully parked on a residential street, he is "ensuring that the homeowner has a clear space to park if it is in front of said homeowner's house [and] that the street sweeper driver has a clear path to sweep the street . . . ." ECF No. 45 at 9:11-10:10. Officer Fish further suggested that a homeowner might be upset by the presence of an unfamiliar car "and could have possibly vandalized or stolen the vehicle, or had it towed." Id. at 24:8-24:17. Officer Fish's take on the doctrine would impermissibly justify the impoundment of every vehicle lawfully parked on any residential street.[8] That is not the law. Cf. Cervantes, 703 F.3d at 1141 ("Under the community caretaking exception, 'police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'") (quoting Miranda, 429 F.3d at 864).

Officer Fish's testimony established that "the vehicle here was impounded for reasons other than to carry out the community caretaking functions of the police." United States v. Maddox, 614 F.3d 1046, 1050 (9th Cir. 2010). It is undisputed that

---

[8] In fact, Officer Fish explained during the evidentiary hearing it was his practice to tow a vehicle without regard to whether the vehicle was legally parked, impeding traffic, or in an apparently safe location. See ECF No. 45 at 53:7-19; see also id. at 69:3-6 ("Policy allows me to have the option of leaving the vehicle parked on the side of the road; however, it's my personal practice to never do that.").

Defendant's vehicle was lawfully parked in a residential neighborhood and that it did not create a hazard to other drivers or jeopardize the efficient movement of vehicular traffic. Although the Government argues the vehicle was a target for vandalism or theft, the Government has not produced sufficient evidence in support of that argument. Officer Fish's testimony—including his demeanor, evasive responses, and suggestion that a homeowner might vandalize or steal a vehicle lawfully parked in front of his or her residence—was simply not credible.

The Government also submitted a declaration from Jason Rohde, an analyst in the Sacramento City Police Department's Crime Analysis Unit. See ECF No. 30-3. Rohde's declaration includes "a map and list of all reports taken by the Sacramento City Police Department for an area around 58th St[.] and U St, from September 1[, 2014] – December 31, 2014." Id. at ¶ 2. The report indicates that in that time period, the Police Department received approximately one reported residential burglary, two vehicle burglaries, and four acts of vandalism in the area surrounding where Defendant had parked his vehicle. Id. at 4.

The Government's submission of Rohde's declaration distinguishes this case from those in which prosecutors failed to present any evidence that impoundment served a caretaking function. Cf. Cervantes, 703 F.3d at 1141 ("the government presented no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in its residential location, or that it posed a safety hazard"); United States v. Burgos, 550 F. App'x 484, 48 (9th Cir. 2013) ("Just as in Cervantes, here, the government presented no evidence that Burgos's vehicle was 'parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft.'"). But the declaration is of limited value, as it establishes only what the Court could have otherwise presumed: that there was at least a theoretical possibility of theft or vandalism to Defendant's vehicle. The declaration does not address whether the reported acts of vandalism were directed at vehicles parked on the street or other property, or whether the vandals targeted random property or the property of persons they knew. Rohde also does not opine on whether

Defendant's vehicle specifically would have been a target for vandalism or theft. But the greatest shortcoming of the Rohde declaration is that it does not address (and is arguably rendered entirely moot by) a critical fact alleged in Defendant's Motion: that Officer Fish refused Defendant's requests to contact his mother—the registered owner of the vehicle who lived approximately eight miles from where the car was lawfully parked—so that she could move the vehicle.

Even if the Government had convincingly established that Officer Fish's concerns of theft and vandalism were reasonable, the community caretaking doctrine would still not justify Officer Fish's impoundment of Defendant's vehicle. The Ninth Circuit has suggested that law enforcement officers must "sufficiently consider alternatives before impounding" a vehicle pursuant to the community caretaking doctrine. Maddox, 614 F.3d at 1050. Here, Defendant "asked several times if he could call his mother, the registered owner of the vehicle, so she could drive it home." ECF No. 24 at 3. Not only did Officer Fish deny Defendant's requests, at the evidentiary hearing he testified that he never "seriously consider[ed]" leaving the vehicle parked on the residential street. ECF No. 45 at 52:14-16. Because Officer Fish did not sufficiently (or at all) consider alternatives to impounding the vehicle, the community caretaking doctrine did not justify the impoundment in this case.

The Government failed to establish a community caretaking function for the impoundment of Defendant's vehicle, and, consequently, failed to establish the constitutional reasonableness of the seizure and subsequent inventory search. See United States v. Caseres, 533 F.3d 1064, 1075 (9th Cir. 2008) ("The government failed to establish a community caretaking function for the impoundment of Caseres's car. It therefore failed to establish the constitutional reasonableness of the seizure and subsequent inventory search."). The Court must therefore GRANT Defendant's Motion to the extent it seeks suppression of the CDs Officer Fish found in the trunk of Defendant's vehicle.

///

### C. The Fruit of the Poisonous Tree

The discovery of all other evidence identified in Defendant's Motion stemmed from Officer Fish's unlawful impoundment and search of the vehicle. "It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible, despite a person's voluntary consent, unless the evidence obtained was purged of the primary taint." United States v. Washington, 490 F.3d 765, 774 (9th Cir. 2007) (internal quotation marks omitted). "It is the government's burden to show that evidence is not 'fruit of the poisonous tree.'" United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002). Here, the Government has not carried that burden, and the Court finds that the unlawful impoundment and search of Defendant's vehicle tainted all evidence that law enforcement subsequently obtained. Accordingly, Defendant's Motion is GRANTED as to each item of evidence that Defendant seeks to suppress.

### CONCLUSION

After a thorough review of all briefs, declarations, testimony, oral arguments, and the applicable case law, Defendant's Motion to Suppress (ECF No. 24) is hereby GRANTED.

IT IS SO ORDERED.

Dated: January 11, 2016

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT